IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| **CARUSO HOMES, INC.,** | * | Case No. 08-18254-JS<br>(Chapter 11) |
| Debtor. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### EMERGENCY MOTION OF DEBTOR FOR AUTHORITY TO USE
### CASH COLLATERAL AND GRANT ADEQUATE PROTECTION THEREFOR

Caruso Homes, Inc., Debtor and Debtor-in-Possession, moves on an emergency basis for authority to use cash collateral and to grant adequate protection therefor and, in support thereof, states:

1. On June 23, 2008 (the "Petition Date") Caruso Homes, Inc. ("CHI") and 24 affiliated entities (collectively with CHI, the "Debtors") filed Voluntary Petitions for relief pursuant to Chapter 11 of the Bankruptcy Code.

2. CHI has remained in possession of its property and continues to manage its financial affairs as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

### Jurisdiction

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory basis for the relief sought herein is 11 U.S.C. §§ 361 and 363.

**Background**

4. The Debtors' primary business consists of developing real property and the management and building of single family homes in Maryland, Virginia and Delaware. The Debtors are comprised of Caruso Homes, Inc. ("CHI") and 24 closely-held affiliated limited liability companies (the "Project Entities"). CHI is organized under the laws of the state of Maryland and each of the affiliated Debtors are organized under the laws the state of Maryland, commonwealth of Virginia or the state of Delaware. The principal place of business of CHI and the Maryland Project Entities is 1655 Crofton Blvd, Suite 200, Crofton, Maryland 21114. The registered place of business of the Virginia Project Entities is 1919 Gallows Road, Suite 320, Vienna, Virginia 22182, and the registered place of business of the one Delaware Project Entity is 1209 Orange Street, Wilmington, Delaware 19901. All of Caruso Homes' operations are managed out of CHI's headquarters office in Crofton, Maryland.

5. The Debtors are organized into two interrelated component units, CHI and the Project Entities. CHI employs substantially all of the employees who provide services to the Debtors and supervises and maintains all of their operations. CHI maintains Caruso Homes' bank accounts and cash management systems and in most instances contracts directly with sub-contractors and material-men providing goods and services used in the development and sale of residential homes. The Project Entities are the direct owners of the raw land, finished lots and homes that are ultimately sold to consumers.

6. The purchase and development of the residential projects are financed primarily through loans from nine institutional lenders, each of whom has a first priority mortgage, deed of trust or indemnity deed of trust on the real property owned by the Project Entities, as well as limited lien

2

rights in CHI and a guaranty from Jeffrey Caruso. In many instances (generally for the Maryland projects), CHI is the direct obligor of the loans from the lenders, with a particular Project Entity executing a guaranty and granting a lien on the specific project the lender is financing (in several of the Project Entities, there are multiple lenders who are financing separate pools of lots). The Debtors' lenders include: M&T Bank (3 projects), Susquehanna Bank (2 projects), Bank of America, N.A. (5 projects), Wachovia Bank, N.A. (5 projects), PNC Bank, National Association (3 projects), MB&T Bank (1 project), Bradford Federal Bank (1 project), Royal Bank of Canada (1 project) and Meridian Bank (3 projects). On several of the projects there are also second mortgages held by buyers who financed a portion of the purchase price of the project.

7. As a general rule, CHI issues purchase orders for each of the Project Entities based on agreed upon contracts or pricing schedules. The goods and services are then provided directly to the Project Entities and CHI thereafter pays the related invoices using cash generated by the Project Entities from financing and home sales (CHI and the Project Entities reflect these transfers as inter-company transactions). Thus, Caruso Homes' vendors may assert claims against one or more of the Project Entities and CHI, the allowance of which will be reviewed in these cases.

8. Contemporaneously with filing their Voluntary Petitions, the Debtors filed a motion pursuant to Bankruptcy Rule 1015(b) for joint administration of their cases. .

### Relief Requested

9. Bankruptcy Rule 4001 provides that the Court may commence a final hearing on a motion for authorization to use cash collateral no earlier than fifteen (15) days after service of the motion. Bankruptcy Rule 4001 further provides that, upon request, the Court may conduct a

3

preliminary hearing before such fifteen (15) day period expires to authorize the use of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

10. The Debtor must be able to use cash collateral before the fifteen (15) day period expires and, by this Emergency Motion, requests that the Court authorize its preliminary use of cash collateral. At the end of such period, the Debtor must be able to continue to use cash collateral and thus requests a final hearing for such use.

11. On or about April 4, 2006 and January 17, 2007, CHI entered into two loan facilities collectively with Morris Helman, JASW LLC, Barbara Kassap, Kassap Family Limited Partnership, Dorothy Mazza, Fedele Mazza Family Limited Partnership, Nathaniel Sandler, Sonia Sandler, Monica Teplis, Dalena Wright, Julius Zulver and Sidney Zulver (the "Creditors"). Pursuant to two Loan and Security Agreement of even date (the "LSA's") CHI granted the Creditors a security interest in, among other things, all of the Debtor's accounts, collateral, chattel paper, deposit accounts, documents, equipment, farm products, fixtures, general intangibles, goods, instruments, inventory, investment property, letter of credit rights and proceeds and products of all of the foregoing (all as they may be defined more specifically in the LSA's) (collectively, the "Collateral"). On April 26, 2006, the Creditors filed UCC Financing Statements with the Maryland State Department of Assessments and Taxation.

12. The Creditors assert that as of the Petition Date, the principal sum of $5.5 million is due and owing from CHI to the Creditors under the terms of the two loan facilities.

13. In order for the Debtor to operate its business, meet its obligations and preserve its business as a going concern, it is necessary for the Debtor to be authorized to use the receipts and cash in which the Creditor claims a security interest.

14. The receipts and cash received from the Debtor's daily operations constitute cash collateral as that term is defined under Section 363(a) of the Bankruptcy Code and may be used by the Debtor with the consent of the Creditor or upon an order of the Bankruptcy Court.

15. The Bankruptcy Code requires "adequate protection" of the Creditor's interest in cash collateral. Such adequate protection is afforded where operations continue at a break-even level or generate a profit and there is a strong likelihood of reorganization. *See, e.g., In re Xinde International, Inc.*, 13 B.R. 212 (Bankr. D. Mass. 1981); *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 376 (Bankr. E. D. Pa. 1987).

16. CHI proposes that, as adequate protection for the Creditors' interest in any Cash Collateral so used, the Creditors be granted a security interest of the same nature, extent and priority as the Creditors' pre-petition security interest in the Collateral and any profits, offspring and proceeds of the Collateral hereinafter acquired, to the extent of the Debtor's use of such Cash Collateral and subject to any lien of a superior priority granted by the terms of any order of the Court.

17. CHI proposes that to the extent it obtains any cash collateral in the ordinary course of its business during the first fifteen (15) days after the Petition Date, that it be authorized to use said cash collateral to pay any obligations set forth in the budget attached hereto as Exhibit A, or until the final hearing on the use of cash collateral.

18. The Debtors require CHI's preliminary use of cash collateral in order to avoid immediate and irreparable harm to the bankruptcy estate pending a final hearing on the use of cash collateral.

19. CHI also seeks to use cash collateral after the expiration of any interim order, on an ongoing basis. CHI requests that the Court authorize CHI, simultaneous with the entry of any

interim order, to put out on negative notice to all parties entitled to notice a notice scheduling a final hearing and that the Court, absent an objection, may grant one or more final order authorizing the CHI's continued use of cash collateral without a hearing.

WHEREFORE, Caruso Homes, Inc., Debtor and Debtor-in-Possession, respectfully requests the following relief:

A. That the Motion be granted and an order in the form attached hereto be entered;

B. That, to avoid immediate and irreparable harm to this bankruptcy estate pending a final hearing on the Debtor's Emergency Motion for Authority to Use Cash Collateral and Grant Adequate Protection Therefor, Caruso Homes, Inc. be authorized to use cash collateral in the ordinary course of business to pay reasonable and ordinary operating expenses in conformity with the budget attached as Exhibit A until a final hearing on the Emergency Motion for Authority to Use Cash Collateral and Grant Adequate Protection Therefor;

C. That, as adequate protection for the Creditor's interest, if any, in any cash collateral so used, the Creditors be granted a security interest of the same nature, extent and priority as the pre-petition security interest the Creditors had in the Collateral and any profits, offspring and proceeds of the Collateral hereinafter acquired, to the extent of the Debtor's use of such cash collateral;

D. That the security interest granted hereby shall become duly perfected without the necessity for filing or execution of documents which might otherwise be required pursuant to applicable non-bankruptcy law for the creation or perfection of such security interest, shall survive the conversion of this case to a case under Chapter 7 of the Bankruptcy Code, and shall be binding upon any subsequently appointed trustee and upon all creditors of the Debtor and its bankruptcy estate;

  E. That nothing contained herein shall preclude any party-in-interest from seeking modification of the order approving this Motion upon appropriate motion to this Court; and

  F. That a final hearing on the Debtor's use of cash collateral be set on negative notice as requested in the motion; and

  G. That Caruso Homes, Inc., Debtor and Debtor-in-Possession, be granted such other and further relief as is just and equitable.

        /s/ Joel I. Sher
        Joel I. Sher, Bar No. 00719
        Richard M. Goldberg, Bar No. 07994
        Shapiro Sher Guinot & Sandler
        36 South Charles Street, 20th Floor
        Baltimore, Maryland 21201
        (410) 385-0202

        *Attorneys for Caruso Homes, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of June, 2008, a copy of the Emergency Motion for Authority to Use Cash Collateral and Grant Adequate Protection Therefor and proposed order was sent by (i) electronic transmission; (ii)overnight delivery, or (iii) hand delivery to the following and to all those parties on the attached Service List.

Mark A. Neal, Esquire
Office of the U.S. Trustee
101 West Lombard Street, Suite 2625
Baltimore, MD 21201

George R. Pitts, Esquire
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, DC 20006

Irving Walker
Cole, Scholtz, Meisel, Forman & Leonard, P.A.
111 South Calvert Street, Suite 2350
Baltimore, Maryland, 21202

Attached Service List

/s/ Richard M. Goldberg
Richard M. Goldberg